# 22-2854-cv

# United States Court of Appeals

*for the*

# Second Circuit

UCHECHUKWU EGBUJO,

*Plaintiff-Appellant,*

– v. –

JACKSON LEWIS P.C.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR DEFENDANT-APPELLEE

JAMES F. SHEA
CAROLYN A. TROTTA
JACKSON LEWIS P.C.
*Attorneys for Defendant-Appellee*
90 State House Square, 8th Floor
Hartford, Connecticut 06103
(860) 522-0404

## Rule 26.1 Corporate Disclosure Statement

Appellee Jackson Lewis P.C. ("Jackson Lewis") hereby states that it has no parent company and no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page(s)**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT............................ii

TABLE OF CONTENTS.............................................................................III

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT .............................................................1

COUNTER STATEMENT OF THE ISSUE ON APPEAL............................1

COUNTER-STATEMENT OF THE CASE ...................................................1

SUMMARY OF ARGUMENT .....................................................................4

ARGUMENT ................................................................................................5

    A.    Standard of Review ...................................................................5

    B.    The District Court Correctly Found that Plaintiff Failed to
        State a Claim for Defamation ...................................................6

        1.    Publication to Norwalk Hospital is Not Publication to
            Someone Other than the Person Defamed ........................6

        2.    Publication to Plaintiff's Attorney is not Publication to
            Someone Other than the Person Defamed ........................9

        3.    Plaintiff's Amended Complaint Fails to Identify
            Publication to Any Other Third Party ...........................13

            i.    Plaintiff's Allegation that "Other Persons" Have
                "Seen" the Investigatory Report Does Not Allege a
                Publication *by* Jackson Lewis..............................13

            ii.    Even if this Allegation Sufficiently Alleges a
                Publication by Jackson Lewis, Publication to
                Unnamed Norwalk Employees Does Not Allege
                a Communication to a Third Party .......................15

    C.    Even if the Amended Complaint Alleges a Publication to a
        Third Party, a Qualified Privilege Applies...............................16

CONCLUSION ..........................................................................................21

CERTIFICATE OF COMPLIANCE...........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahams v. Young & Rubicam*,
 979 F. Supp. 122 (D. Conn. 1997)........................................................................6

*Ackerman v. Sobol Family Partnership, LLP*,
 298 Conn. 495, 4 A.3d 288 (2010) ...................................................................10

*Allaire Corp. v. Okumus*,
 433 F.3d 248 (2d Cir. 2006) .................................................................................5

*Commodity Futures Trading Comm'n v. Weintraub*,
 471 U.S. 343 105 S. Ct. (1986)..........................................................................18

*Cweklinsky v. Mobil Chem. Co.*,
 267 Conn. 210 (2004) .................................................................6, 7, 9, 12, 13

*Domitz v. City of Long Beach*,
 737 F. App'x 589 (2d Cir. 2018) ......................................................................20

*Dynamic Air, Inc. v. Boccard*,
 Civ. No. 01-2148 (JNE/JGL) (D. Minn. Sep. 4, 2003) ....................................19

*Gallo v. Barile*,
 284 Conn. 459 (Conn. 2008) .............................................................................17

*Gruss v. Zwirn*,
 276 F.R.D. 115 (S.D.N.Y. 2011) ......................................................................20

*Hoch v. Loren*,
 273 So. 3d 56 (Fla. Dist. Ct. App. 2019)............................................................7

*Hopkins v. O'Connor*,
 282 Conn. 821 (2007) ........................................................................................14

*Kisor v. Wilkie*,
 139 S. Ct. 2400 (2019)........................................................................................13

*Lane v. United Electric Light & Water Co.*,
 88 Conn. 670 (1914) ...........................................................................................10

iv

*McDonald v. City of Chi.*,
    561 U.S. 742 (2010).........................................................................13

*McKenna v. Wright,*
    386 F.3d 432, 436 (2d Cir. 2004) ..................................................20

*Miles v. Perry*,
    11 Conn. App. 584 (1987) ...............................................................17

*Mujo v. Jani-King Int'l*,
    13 F.4th 204 (2021) ...........................................................................8

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ..............................................................20

*Pryor v. Brignole*,
    No. HHDCV156059311S, 2016 Conn. Super. LEXIS 426 (Super.
    Ct. Mar. 8, 2016)...............................................................................17

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) ............................................................13

*Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*,
    247 Conn. 801 (1999) ........................................................................9

*State v. Afscme, Council 4, Local 391*,
    309 Conn. 519 (Conn. 2013) ...........................................................18

*Torosyan v. Boehringer Ingelheim Pharms, Inc.*,
    234 Conn. 1, 662 A.2d 89 (1995) ....................................................17

*Trap Falls Realty Holding Ltd. Partnership v. Board of Tax Review of
    Shelton*,
    29 Conn. App. 97 (1992) ............................................................10, 12

*U.S. v. Int'Broth. Of Teamsters, Chauffeurs, Warehousemen and
    Helpers of America, AFL-CIO*,
    986 F.2d 15, 20–21 (2d Cir. 1993) ...................................................7

*Walton v. Bromberg & Co.*,
    514 So. 2d 1010 (Ala. 1987)............................................................11

*West Haven v. U.S. Fidelity & Guaranty Co.,*

174 Conn. 392, 395 A.2d 741 (1978) .......................................................7

**Statutes**

28 U.S.C. § 1332.......................................................................................1

## JURISDICTIONAL STATEMENT

Defendant supplements Plaintiff's jurisdictional statement as follows. The District Court had subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of South Carolina and Jackson Lewis is incorporated in the Commonwealth of Pennsylvania, with a principal place of business in West Harrison, New York, and the amount in controversy exceeded $75,000, exclusive of interest or costs.

## COUNTER-STATEMENT OF THE ISSUE ON APPEAL

Whether the District Court (*Dooley, J.*) properly granted Defendant's Motion to Dismiss Plaintiff's single count complaint alleging defamation for failure to state a claim because Plaintiff failed to allege publication of a defamatory statement by Jackson Lewis to a third party.

## COUNTER-STATEMENT OF THE CASE

Plaintiff Uchechukwu Egbujo was a medical resident at Norwalk Hospital. (PA 35.[1]) During his tenure as a medical resident, another medical resident accused him of sexual assault. (PA 35.) Norwalk Hospital hired Jackson Lewis to investigate the accusation against Plaintiff "and report back to" Norwalk Hospital. (PA 35.)

---

[1] For ease of reference, citations to Plaintiff's Appendix will be referred to as "PA." Citations to Plaintiff's Brief will be referred to as "Pl's Br."

Jackson Lewis P.C. is a labor and employment law firm with approximately 950 attorneys in offices nationwide.  *See Jackson Lewis: About Us*, available at https://www.jacksonlewis.com/firm/about-us (last visited June 24, 2023).  Jackson Lewis's services include conducting internal workplace investigations into alleged wrongful conduct, such as sexual harassment or sexual assault.  *See Jackson Lewis: Corporate Governance and Internal Investigations*, available at https://www.jacksonlewis.com/services/corporate-governance-and-internal-investigations#_Services_we_offer (last visited June 24, 2023).

As part of its investigation into the allegation of sexual assault against Plaintiff, Jackson Lewis interviewed the Plaintiff, the medical resident accusing Plaintiff of sexual assault, and other employees of Norwalk Hospital.  (PA 35.) Jackson Lewis then drafted two reports of its investigation.  (PA 36.)  Jackson Lewis included in its investigatory reports the statements made by the individuals it interviewed during its investigation.  (PA 36 ¶¶ 12, 14.)  Those statements included that "Plaintiff 'often touches women in the workplace' in an unwelcome manner," "Plaintiff 'assaulted' the accuser," and "Plaintiff stated to the accuser, 'Don't tell anyone what happened, it could be bad for your career.'"  (PA 35 ¶ 10.)  Jackson Lewis provided the first and second report to Norwalk Hospital and the second report was transmitted to "Plaintiff's attorney."  (PA 36 ¶¶ 12, 14-15.)  Plaintiff alleges that "[i]t is uncertain whether the second report has been delivered to persons other than

Norwalk Hospital, its employees, and Plaintiff's attorney. According to information and belief, other persons have seen the second report . . . ." (PA 36 ¶ 16.)

## SUMMARY OF ARGUMENT

Plaintiff seeks to impose liability on a law firm that was hired to investigate an allegation of workplace sexual assault, conducted said investigation, and reported to its client what it learned during that investigation. In doing so, Plaintiff asks this Court to advance a "novel and untested theory of defamation liability." (PA 102.) The District Court roundly rejected Plaintiff's "novel and untested theory," and this Court should do the same. (*See* PA 102.) Simply put, the District Court correctly held that "[t]he law does not support . . . and indeed precludes" a conclusion that "an attorney hired to investigate employee misconduct may be found liable for defamation to that employee, if, following the conclusion of the investigation, the attorney discloses to the employer the content of witness statements made during the investigation." (PA 97.)

As the District Court correctly concluded, Plaintiff fails to state a claim of defamation against Jackson Lewis because his Amended Complaint fails to allege a publication by Jackson Lewis to a third party. (PA 100-03.) Plaintiff argues that the District Court erred because he alleged a publication to (1) Jackson Lewis's client, Norwalk Hospital, (2) Plaintiff's attorney, and (3) Norwalk Hospital's employees. None of these allegations, however, are sufficient to allege a publication by Jackson Lewis to a third party. First, Jackson Lewis's communication of the report to its client is not publication to a third party based on basic agency principles.

Second, publication to Plaintiff's attorney is not publication to a third party based on those same agency principles. Third, Plaintiff's complaint does not allege a publication *by* Jackson Lewis to any improper person, and thus, the allegation that employees of Norwalk Hospital have seen the investigatory report is insufficient to state a claim of defamation against Jackson Lewis. Moreover, even if this allegation was sufficient to state a publication by Jackson Lewis, it still fails to allege a publication to a third party because Jackson Lewis was required to provide the report to Norwalk Hospital employees, as they are the ones who hired Jackson Lewis on behalf of Norwalk Hospital. Plaintiff does not allege that Jackson Lewis provided the report to any employees who should not have seen it as part of that attorney-client engagement. Finally, because the District Court concluded that there was no publication to a third party and did not reach Jackson Lewis's argument that a qualified privilege protects its publication of an investigatory report to authorized recipients, this Court need not reach the issue. If this Court did reach the issue, it should conclude that such privilege does bar Plaintiff's defamation claim.

## ARGUMENT

### A.    Standard of Review

The grant of a Rule 12(b)(6) Motion to Dismiss is subject to *de novo* review. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-250 (2d Cir. 2006).

**B.**     **The District Court Correctly Found that Plaintiff Failed to State a Claim for Defamation**

As the District Court correctly concluded, to state a claim for defamation, Plaintiff must plead "'what defamatory statements were made . . . . when they were made, and to whom they might have been made.' *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997)." (PA 98.)  Moreover, "to 'constitute a publication it is necessary that the defamatory matter be communicated to someone other than the person defamed.' Restatement, Torts § 577 (1938)." (PA 98.)  Thus, to establish a prima facie case of defamation, "the plaintiff must demonstrate that: (1) **the defendant** published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published **to a third person**; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004) (emphasis added).  Plaintiff fails to allege a publication by Jackson Lewis to a third party, and his Amended Complaint thus fails to state a claim for defamation.

**1. Publication to Norwalk Hospital is Not Publication to Someone Other than the Person Defamed**

The District Court correctly concluded that Plaintiff's allegations of publication of the investigatory report to Norwalk Hospital did not constitute publication to a third party based on "unassailable principles of agency." (PA 100.) Those "unassailable principles" are as follows:

- "The lawyer-client relationship is one of agent-principal." (PA 99 (citing *U.S. v. Int'Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 986 F.2d 15, 20–21 (2d Cir. 1993).)

- "An attorney is the client's agent." (PA 99 (citing *Ackerman v. Sobol Family Partnership, LLP*, 298 Conn. 495, 509–11, 4 A.3d 288 (2010).)

- "[A]ny knowledge the agent has is imputed to the client." (PA 99 (citing *West Haven v. U.S. Fidelity & Guaranty Co.*, 174 Conn. 392, 395 A.2d 741 (1978).)

Accordingly, Plaintiff's allegation of Defendant's publication to its principal/client, Norwalk Hospital, is nothing more than Defendant "communicating with itself." (PA 100.)

Publication by an attorney to the attorney's client is not a publication to a third party "where [their] interests . . . [are] unified." *Hoch v. Loren*, 273 So. 3d 56, 58 (Fla. Dist. Ct. App. 2019) (dismissing defamation claim against attorney who sent a copy of a cease and desist letter allegedly containing defamatory statements to his client). This is true because the agency relationship between attorney and client renders the communication between the attorney and client as "tantamount to the principal 'talking to itself.'" *Id.*[2]

_____

[2] Plaintiff takes issue with the District Court's citation to *Hoch* but fails to identify any Connecticut law that rejects the agency principles identified in *Hoch*. (*See* PA 19-20.) To the extent Plaintiff is arguing that Connecticut would never look to caselaw in other jurisdictions when deciding how to interpret and apply common law, his position is inconsistent with the Connecticut Supreme Court's. *See, e.g.*, *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. at 217-21 (analyzing caselaw from Minnesota, Tennessee, Illinois, and Hawaii in deciding "whether Connecticut recognizes a cause of action for defamation based on a former

Plaintiff does not argue or cite any law contradicting these "unassailable principles." (PA 100.) Instead, Plaintiff argues that the key question is "[w]ho constitutes a third party," which Plaintiff claims is unanswered. (Pl's Br. 20.) Plaintiff provides no analysis, however, of what "third party" means. (*See* Pl's Br. 20.) In fact, the plain meaning of the term "third party" can only mean someone other than the defendant (the alleged defamer) or plaintiff (the alleged defamee). This interpretation is consistent with Black's Law Dictionary definition of "third party" as "someone who is not a party to a lawsuit, agreement, or other transaction but who is usu. somehow implicated in it; someone other than the principal parties. — Also termed outside party; third person." Black's Law Dictionary (11th ed. 2019).

The judgment of the District Court is consistent with the basic tenets of agency principles and defamation common law—publication to Norwalk Hospital it not publication to a third party. There is no error.

---

employee's compelled self-publication of a former employer's defamatory statement made only to the employee"). Moreover, it is the federal court's "job to predict how the [Connecticut Supreme Court] would decide the issues before [it]." *Mujo v. Jani-King Int'l*, 13 F.4th 204, 215 (2021) (citation and internal quotation marks omitted) (alteration in original). The District Court's decision is consistent with how Connecticut interprets Connecticut agency principles, and Plaintiff identifies no error in the District Court's reasoning.

## 2. Publication to Plaintiff's Attorney is not Publication to Someone Other than the Person Defamed

On its Motion to Dismiss, Jackson Lewis argued that Plaintiff's allegation that the alleged defamatory statements were "transmitted to Plaintiff's attorney" failed to allege a publication to a third party because, under basic agency principles, publication to Plaintiff's attorney is tantamount to publication to Plaintiff. (PA 45-46.) The District Court agreed, concluding that "[t]ransferring information to Plaintiff's attorney is one in the same as transferring information directly to Plaintiff." (PA 102-03.) Therefore, because publication to Plaintiff is insufficient to create liability for defamation, there can be no liability for publication to Plaintiff's attorney. *See Cweklinsky v. Mobil Chem. Co.*, 267 Conn. at 217 ("As a general rule . . . no action for defamation exists if the defendant publishes the defamatory statements to only the plaintiff, and the plaintiff subsequently disseminates the statements to a third person." (citing 3 Restatement (Second), supra, § 577, comment (m), p. 206; W. Prosser & W. Keeton, supra, § 113, p. 802)); *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 810-811 (1999) (concluding that a complaint failed to allege "'publication' of material to a third party" because it was "based entirely on comments directly made only to the claimants").

Although not entirely clear, Plaintiff's claim of error appears to be that the District Court accepted Jackson Lewis's argument despite a lack of "Connecticut authority treating a plaintiff and his attorney as a single entity for purposes of a

defamation claim." (Pl's Br. 16.) As the District Court explained, Plaintiff's Amended Complaint asserts a "novel and untested theory of defamation liability." (PA 102.) Accordingly, it was appropriate for the District Court to examine how Connecticut applies basic agency principles and conclude that, under Connecticut law, "Plaintiff and his attorney are in an agent-principal relationship." (PA 102.)

Connecticut recognizes the basic agency principle that communications to a principal's agent (an attorney) are tantamount to communications to the principal (the client). *See Trap Falls Realty Holding Ltd. Partnership v. Board of Tax Review of Shelton*, 29 Conn. App. 97, 103 (1992) ("It is axiomatic that notice to the agent while acting within the scope of the agent's authority is notice to the principal."); *Lane v. United Electric Light & Water Co.*, 88 Conn. 670, 675 (1914) ("It is well settled that notice to an agent of a party, whose duty it is, as such agent, to act upon the notice, or to communicate the information to his principal, in the proper discharge of his trust as such agent, is legal notice to the principal." (citation and internal quotation marks omitted)); *see also Ackerman*, 298 Conn. at 509 (applying agency principles "to the relationship between attorneys and their client").

Plaintiff cites no case law indicating that Connecticut rejects this basic agency principle. (*See* Pl's Br. 20-22.) Instead, Plaintiff argues that the cases cited by the District Court are not defamation claims. (Pl's Br. 16-17.) But Plaintiff makes no argument as to why basic agency principles would apply differently in a defamation

case than in any other case. (*See* Pl's Br. 15-17.) In fact, Plaintiff cites no caselaw from any jurisdiction stating that agency principles do not apply in defamation cases. Indeed, courts in other jurisdictions have concluded that agency principles do apply to defamation claims. *See Walton v. Bromberg & Co.*, 514 So. 2d 1010, 1012 (Ala. 1987) ("Basic principles of agency law operate within the area of defamation law . . . ."). There is no basis to conclude that Connecticut would come to a different outcome.

Plaintiff also argues that the Amended Complaint does not allege that his attorney was representing him in connection with the investigation. The trial court called this argument "at best, disingenuous." (PA 103 n.10.) Indeed, as the trial court concluded, "[t]he only inference to be drawn from the Amended Complaint is that Plaintiff's attorney, to whom the allegedly defamatory statements were communicated, was retained in connection with the allegations of misconduct." (PA 103 n.10.) Indeed, by calling him "Plaintiff's attorney," the Amended Complaint confirms that Plaintiff was being represented by said attorney. (PA 36 ¶ 15 "The second report was then transmitted to ***Plaintiff's attorney*** on October 17, 2019." (emphasis added).)

Regardless of whether Plaintiff's attorney represented him in connection with the investigation, however, the foregoing basic agency principles do not turn on the context of the attorney's representation, but rather, whether the agent was acting

"within the scope of the agent's authority." *See Trap Falls Realty Holding Ltd. Partnership v. Board of Tax Review of Shelton*, 29 Conn. App. at 103 ("It is axiomatic that notice to the agent while acting within the scope of the agent's authority is notice to the principal."). No allegation in the Amended Complaint, read in the light most favorable to Plaintiff, can be interpreted to conclude that Plaintiff's attorney was acting outside the scope of his agent's authority when the investigatory report was transmitted to him. (*See generally* Compl., PA 34-37; *see also* PA 36 ¶ 15 (alleging that the report was transmitted to "Plaintiff's attorney")).

In addition, Plaintiff argues that the District Court improperly cited *Cweklinsky*. (Pl's Br. 17.) But the District Court's citation to *Cweklinsky* was entirely appropriate, as *Cweklinsky* holds that "no action for defamation exists if the defendant publishes the defamatory statements to only the plaintiff," and here, Plaintiff's allegations of publication to his attorney equates to publication to Plaintiff. *See Cweklinsky v. Mobil Chem. Co.*, 267 Conn. at 217.

Finally, Plaintiff takes issue with the District Court's citation to a law review article in support of its review of basic agency principles. (Pl. Br. 17.) Plaintiff offers no analysis to contradict the basic agency principle asserted in that article— that "[w]ithin the scope of the representation, what the lawyer knows the client is deemed to know, and the lawyer's acts bind the client so long as the lawyer acts with actual or apparent authority" and "[t]he lawyer's duties to the client, like the client's

12

to the lawyer, are grounded in agency." Deborah A. DeMott, *The Lawyer as Agent*, 67 Fordham L. Rev. 301, 308 (1998). Instead, Plaintiff takes issue with the court citing a law review article at all, apparently ignoring that this very Court, the Supreme Court, and the Connecticut Supreme Court frequently cite law review articles. *See, e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019); *McDonald v. City of Chi.*, 561 U.S. 742, 756 (2010); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 157 (2d Cir. 2001); *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. at 222.

Plaintiff identifies no basis of error in the District Court's conclusion that an allegation of an investigatory report of alleged sexual assault to Plaintiff's attorney does not constitute a publication to a third party. The District Court's judgment should be affirmed.

### 3. Plaintiff's Amended Complaint Fails to Identify Publication to Any Other Third Party

#### i. Plaintiff's Allegation that "Other Persons" Have "Seen" the Investigatory Report Does Not Allege a Publication <u>by</u> Jackson Lewis

Plaintiff argues that his allegation that "[a]ccording to information and belief, other persons have seen the report" is sufficient to allege a publication to a third person. (Pl's Br. 13-14.) The District Court correctly rejected this argument because these allegations fail to identify any publication ***by*** Jackson Lewis. (PA 100.)

Plaintiff's argument of error focuses on the identity of these unnamed "other persons," but this argument is a red herring. (Pl's Br. 14-15.) Plaintiff's allegation

that "other persons have seen the second report" cannot be read as alleging a publication *by* Jackson Lewis.   And Jackson Lewis *did* argue this in its Motion to Dismiss.  (PA 45 n.1 ("Plaintiff also alleges that '[a]ccording to information and belief, other persons have seen the second report,' but ***does not identify those other persons*** and does not even allege that these unidentified persons saw the report due to a publication by Defendant." (emphasis added)).)  Plaintiff then argued in his Opposition to Motion to dismiss that the Amended Complaint alleged a publication to Norwalk Hospital's employees. (PA 58-59.).   In response to that argument, Jackson Lewis pointed out (again), in its Reply, that this allegation failed to identify the alleged "other persons" and regardless, failed to allege a publication *by* Jackson Lewis.  (PA 67.)  The District Court agreed. (PA 100 n.5 ("Plaintiff alleges that '[a]ccording to information and belief, other persons have seen the second report,' but neither identifies those other persons nor alleges that Defendant published the report to those unidentified persons.").)

Plaintiff cites no case law that would impose liability on Jackson Lewis just because "other persons" may have (on Plaintiff's information and belief) "seen" the investigatory report.  (*See* Pl's Br. 13-15.)  Indeed, no such liability lies.  *See Hopkins v. O'Connor*, 282 Conn. 821, 838 (2007) ("To establish a prima facie case of defamation, the plaintiff must demonstrate that . . . ***the defendant*** published a defamatory statement . . . ." (emphasis added)).  Accordingly, Plaintiff's allegation

that "other persons" have "seen" the report fails to allege a publication by Jackson Lewis.  Accordingly, Plaintiff cannot maintain a defamation claim based on a vague allegation that other persons have seen the report and the District Court's decision should be affirmed.

### ii. Even if this Allegation Sufficiently Alleges a Publication by Jackson Lewis, Publication to Unnamed Norwalk Employees Does Not Allege a Communication to a Third Party

Plaintiff appears to argue that his allegation in Paragraph 16 of the Amended Complaint alleges a publication to "third-party employees of [Norwalk] Hospital." (Pl's Br. 15.)  Because this allegation fails to allege a publication to any employee of Norwalk Hospital who was unauthorized to see the investigatory report, it also fails to state a claim for relief.

The most generous reading of the Amended Complaint alleges nothing more than Jackson Lewis doing exactly what it was hired to do: investigate a complaint of sexual assault in the workplace and report to its client.  Under no reading of the Amended Complaint could Plaintiff be alleging that the report was provided to *unauthorized* employees *i.e.*, employees other than the constituent Norwalk Hospital employees with whom Jackson Lewis was required to communicate as part of its representation of the hospital.  *See* Rule of Professional Conduct 1.13(a) ("A lawyer employed or retained by an organization **represents the organization acting through its duly authorized constituents**." (emphasis added)).  Accordingly, an

15

allegation that Jackson Lewis communicated the investigatory report to Norwalk

Hospital's employees (to the extent there is even such an allegation) is the same as

Jackson Lewis publishing the report to its client. Plaintiff fails to refute that Norwalk

Hospital is Defendant's client and publication by an attorney to the attorney's client

(even through its constituent employees) is not publication to a third party. *See*

Section I.B.1, *supra*.

Plaintiff's allegation that the investigatory report was delivered to Norwalk

Hospital's employees and that unnamed "other persons" may have seen the report is

insufficient to allege a publication to a third person. The District Court's judgment

should be affirmed.

## C.     Even if the Amended Complaint Alleges a Publication to a Third Party, a Qualified Privilege Applies

This Court need go no further, as the District Court did not reach the issue of

whether a qualified privilege applies in these circumstances because of the clear

"agency principles" and "absence of any authority supporting Plaintiff's theory of

liability." (PA 102 n.9.) Nevertheless, Plaintiff misinterprets the District Court's

decision as "simply assuming that such a privilege exists and applies here." (Pl's

Br. 18-19.)

Although the District Court did not decide whether a privilege would protect

Jackson Lewis's dissemination of the investigatory report of an alleged sexual

assault in the workplace, it did note there is "a strong federal policy favoring

16

vigorous enforcement of federal civil rights statutes such as Title VII. . . .  And private efforts to irradicate employment discrimination and harassment would be undermined if statements made during investigations were not protected by a qualified privilege." (PA 102 n.9 (citation and internal quotation marks omitted).) Moreover, "the Connecticut Supreme Court has recognized, as a matter of law, that there is an intra-corporate communications privilege that applies to a report produced during an internal investigation. *Torosyan v. Boehringer Ingelheim Pharms, Inc.*, 234 Conn. 1, 29, 662 A.2d 89 (1995)."  (PA 102.)

Indeed, all of the elements of a qualified privilege apply here and bar Plaintiff's defamation claim.  "A qualified privilege protects false statements that are not made maliciously." *Gallo v. Barile*, 284 Conn. 459, 464 n.6 (Conn. 2008). The elements of qualified privilege are "(1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." *Miles v. Perry*, 11 Conn. App. 584, 595 (1987).

Applying a qualified privilege would uphold the interest of the attorney-client relationship.  "[T]he attorney-client relationship may represent an 'interest to be upheld,' as required for the first element of a privilege asserted to defeat a defamation claim . . . ." *Pryor v. Brignole*, No. HHDCV156059311S, 2016 Conn. Super. LEXIS 426, at *9 (Super. Ct. Mar. 8, 2016).

Moreover, applying the qualified privilege would uphold the state and federal interest in addressing workplace misconduct, including sexual harassment and sexual assault. *See State v. Afscme, Council 4, Local 391*, 309 Conn. 519, 526 (Conn. 2013) ("[T]here is a clear, well-defined and dominant policy against sexual harassment in this state."). As the District Court concluded, "attorneys hired by employers to conduct such an investigation must be able to collect and convey the findings without fear of defamation lawsuits. The alternative would chill the well-established public policy in favor of 'full and frank communications between attorneys and their clients.' *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 105 S. Ct. [(1986)]." (PA 101 (footnote omitted).)

The District Court also correctly noted that "attorneys hired by employers to conduct . . . an investigation must be able to collect and convey the findings without fear of defamation lawsuits." (PA 101.) If allowed to proceed, Plaintiff's case theory would impede employers' ability to conduct accurate and effective investigations into allegations of workplace misconduct. Employers and third-party investigators would be prohibited from accurately quoting witness statements. Third-party investigators would be prohibited from accurately reporting a summary of its investigation back to the employer. If that is the outcome, no true investigation would have been conducted at all.

As to the second element of a qualified privilege, the alleged defamatory statements were limited in scope to the purpose of an investigation report of sexual assault by a law firm to its client. (PA 35-36.) Plaintiff does not allege that the statement was extraneous or somehow unrelated to the purpose of the report. Indeed, the statements identified by Plaintiff as defamatory are precisely the type of statements that ***must be*** included in an investigative report into an allegation of sexual assault in the workplace, such as statements that "Plaintiff 'often touches women in the workplace' in an unwelcome manner," "Plaintiff 'assaulted' the accuser," and "Plaintiff stated to the accuser, 'Don't tell anyone what happened, it could be bad for your career.'" (PA 35 ¶ 10.)

As to the third element, Plaintiff alleges no facts to support a conclusion that Defendant acted in bad faith. Instead, Plaintiff alleges that Jackson Lewis merely reported to its client the results of its investigation—including statements made by witnesses—exactly as Jackson Lewis was hired (and required) to do. (PA 35-36.) Nothing about these facts is indicative of Defendant acting in bad faith.

As to the fourth element, the alleged defamatory statement was made on proper occasion because the report was provided to Defendant's client in response to the client's request. *See Dynamic Air, Inc. v. Boccard*, Civ. No. 01-2148 (JNE/JGL), at *8 (D. Minn. Sep. 4, 2003) (finding qualified privilege satisfied because, *inter alia*, the alleged defamatory statements were conveyed by the

company's president in response to a manufacturer's solicitation for comments about a manufacturing system and thus were made upon "proper occasion"). Defendant's report, and the allegedly defamatory statement contained therein, was provided in response to its client's request for an investigation report and were thus made on proper occasion. (PA 35 ¶ 7 ("The administration of Norwalk Hospital hired Defendant to investigate the accusations and report back to said administration.").)

As to the fifth element, the report was published in a proper manner to proper parties only. Plaintiff does not allege that the investigation report was "published excessively, *i.e.*, that it was made to persons with an insufficient interest in it for it to warrant protection." *See Gruss v. Zwirn*, 276 F.R.D. 115, 137 (S.D.N.Y. 2011). Accordingly, Defendant published the report only to those with an interest in the report.

Lastly, Plaintiff's argument that this Court cannot consider a qualified privilege on a motion to dismiss is inconsistent with Second Circuit precedent. (*See* Pl's Br. 18.) This Court has held that it is appropriate to consider affirmative defenses on a 12(b)(6) motion if "the facts supporting the defense appear on the face of the complaint." *Domitz v. City of Long Beach*, 737 F. App'x 589, 590 (2d Cir. 2018) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (affirming grant of motion to dismiss because defendant was entitled to official immunity).

It is important to keep in mind what this case is not about. This is not a case in which Plaintiff alleges Jackson Lewis fabricated or falsified allegedly defamatory statements. There is no allegation suggesting malice or bad faith, and Plaintiff does not now argue that Jackson Lewis acted with malice or bad faith. (*See* Pl's Br. 18.) Plaintiff has pleaded no facts that indicate Defendant had any improper or unjustifiable motive in including the allegedly defamatory statements in its investigation report to its client. (*See generally* Compl., PA 34-37.) Accordingly, there are no facts pleaded in the Complaint to overcome the application of qualified immunity by establishing malice.

## CONCLUSION

For the reasons stated above, this Court should affirm the judgment of the District Court granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint in its entirety.

Respectfully submitted,

s/*James F. Shea*
James F. Shea
Carolyn A. Trotta
JACKSON LEWIS P.C.
90 State House Square
Hartford, CT 06103
(860) 522-0404
James.Shea@jacksonlewis.com
Carolyn.Trotta@jacksonlewis.com
*Attorneys for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 5,266 words and 562 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Professional Edition 2016 in 14-point Times New Roman font.

*/s/ Carolyn A. Trotta*
Carolyn A. Trotta