# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of December, two thousand twenty-three.

PRESENT:
        RICHARD C. WESLEY,
        DENNY CHIN,
        JOSEPH F. BIANCO,
            *Circuit Judges*.

_____

Uchechukwu Egbujo,

        *Plaintiff-Appellant*,

v.                          22-2854-cv

Jackson Lewis P.C.,

        *Defendant-Appellee*.

_____

FOR PLAINTIFF-APPELLANT:        CLIFFORD THIER, Thier Law Offices, LLC, West Hartford, CT.

FOR DEFENDANT-APPELLEE:        JAMES F. SHEA (Carolyn A. Trotta, *on the brief*), Jackson Lewis P.C., Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Dooley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Uchechukwu Egbujo appeals the district court's judgment, entered on October 31, 2022, dismissing his amended complaint against law firm Jackson Lewis P.C. ("Jackson Lewis"), in which Egbujo asserted a defamation claim in connection with the law firm's dissemination of written reports about the results of an internal investigation. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

The amended complaint alleged that Egbujo, while he was a medical resident at Norwalk Hospital (the "Hospital") in Connecticut, was accused of sexual assault by another medical resident. The Hospital hired Jackson Lewis to investigate the allegations and report its findings to it. After conducting interviews, Jackson Lewis allegedly shared written reports of its investigation with the Hospital, Egbujo's attorney, and possibly other individuals. Egbujo asserts that these reports repeated false statements about him made by his accuser and others during the interviews, and that the republication by Jackson Lewis of those false statements in the written reports constituted defamation under Connecticut law.

The district court granted Jackson Lewis's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Egbujo v. Jackson Lewis, P.C.*, No. 3:21-CV-01450 (KAD), 2022 WL 4585688, at *5 (D. Conn. Sept. 29, 2022). The district court concluded that Egbujo had failed to establish a *prima facie* case of defamation because he had not

alleged that the defendant published any defamatory statements to a third party, as required under Connecticut law. *Id*. at *2 (citing *Simms v. Seaman*, 308 Conn. 523, 547–48 (2013)). Applying principles of agency law, the district court held that neither Jackson Lewis's communications with its client, *i.e.*, the Hospital, nor its communications with Egbujo's attorney constituted a publication to a third party because an attorney's knowledge is imputed to the client. *Id*. at *3. Having found that dismissal was warranted because of a lack of publication, the district court did not reach the issues of whether the underlying statements were false or whether Jackson Lewis's dissemination of the reports to its client and Egbujo's attorney was protected by a qualified privilege. However, the district court noted that the public policy considerations undergirding its reasoning with respect to publication would also support a finding of qualified privilege. *Id*. at *4 n.9.

On appeal, Egbujo argues that the district court erred by: (1) concluding that Jackson Lewis's transmission of the investigative reports to the Hospital and to his attorney did not constitute publication of defamatory statements to a third party; and (2) disregarding the allegation in the amended complaint that other persons, in addition to the Hospital and Egbujo's attorney, reviewed one of Jackson Lewis's written reports about the investigation.

"We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6) . . . , accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (collecting cases). To survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3

"A federal court sitting in a diversity case will apply the substantive law of the forum state . . . ." *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). We determine the law of the forum state *de novo*, affording "the greatest weight to decisions of" the forum state's highest court. *Id.* Where that court is silent, our role "is carefully to predict how [it] would resolve the uncertainty or ambiguity[,]" considering decisions of the lower state courts and, to the extent that the forum state's highest court would consider them persuasive, cases from other jurisdictions. *Id.* (internal quotation marks and citations omitted). Here, both parties agree that Connecticut law applies to Egbujo's defamation claim.

Under Connecticut law, "[t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms*, 308 Conn. at 547–48 (internal quotation marks and citation omitted). The publication of the defamatory statement must be unprivileged. *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 316 (1984). Privileged communications fall into two categories: those protected by an absolute privilege (*i.e.*, nonactionable even if made with malice) and those protected by a qualified privilege. *See Khan v. Yale Univ.*, 347 Conn. 1, 49–50 (2023). "A qualified privilege protects false statements that are not made maliciously." *Gallo v. Barile*, 284 Conn. 459, 463 n.6 (2007). "When considering whether a qualified privilege protects a defendant in a defamation case, the court must resolve two inquiries[:] . . . whether the privilege applies, [and] . . . whether the applicable privilege nevertheless has been defeated through its abuse . . . ." *Gambardella v. Apple*

4

*Health Care, Inc.*, 291 Conn. 620, 628 (2009) (internal citations omitted). Whether the privilege applies is a question of law, while the issue of whether the applicable privilege has been defeated through its abuse is a question of fact. *Id.*

Connecticut's lower courts "have traditionally placed the onus on the defendant to plead and prove privilege" in light of the Connecticut Appellate Court's "determination that privilege is an affirmative defense in a defamation action . . . ." *Shea v. City of Waterbury*, No. CV085007926, 2009 WL 1057986, at *3 (Conn. Super. Ct. Feb. 20, 2009) (alteration adopted) (internal quotation marks and citations omitted). However, where it is possible "to ascertain, on the face of the pleadings [and] as a matter of law" that a privilege applies, a court may properly dismiss a claim of defamation before the factual record is developed. *Id.* (collecting cases); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citations omitted)).

As set forth below, it is apparent on the face of the amended complaint that Jackson Lewis was protected by a qualified privilege to disseminate the allegedly defamatory statements to its client and Egbujo's attorney, and there are no allegations plausibly supporting an abuse of that privilege. Therefore, because we conclude that the claim fails as a matter of law based on qualified privilege, we need not address whether the district court erred in holding that the amended complaint failed to properly allege that the statements contained in the reports were published to third persons. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("[W]e may affirm on any ground supported by the record." (internal quotation marks and citation omitted)).

5

The elements of qualified privilege are: "(1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." *Miles v. Perry*, 11 Conn. App. 584, 595 (Conn. App. Ct. 1987). "A qualified privilege is appropriate when it 'is based on a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests, the interests of a third person or certain interests of the public.'" *Khan*, 347 Conn. at 49–50 (alterations adopted) (quoting *Gallo*, 284 Conn. at 468 n.12).

Here, the written reports were shared by Jackson Lewis with the Hospital pursuant to the Hospital's valid interest in investigating allegations of sexual assault and learning about the results of that investigation. The Connecticut Supreme Court has made clear that, although an intracorporate communication may constitute a "publication" of a defamatory statement in some circumstances, "communications between managers regarding the review of an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege." *Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 234 Conn. 1, 27–29 (1995). Connecticut courts have similarly recognized the attorney-client relationship as a potential "interest to be upheld" for purposes of qualified privilege. *Pryor v. Brignole*, No. HHDCV156059311S, 2016 WL 1102508, at *4 (Conn. Super. Ct. Mar. 8, 2016). Therefore, communications between an attorney (whether an in-house attorney or outside counsel) and his or her corporate client regarding the results of an investigation of sexual harassment allegations by its employee, including written reports of the investigation, are protected by the qualified privilege under Connecticut law because "[s]uch communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business," including its interest in properly

6

investigating allegations of sexual harassment. *Torosyan*, 234 Conn. at 29; *see also Khan*, 347 Conn. at 51–52 (emphasizing the importance of encouraging victims of sexual assaults to report their abuse in holding that a qualified privilege applies to statements made by individuals alleging sexual assault to proper authorities at institutions of higher education); *State v. AFSCME, Council 4, Loc. 391*, 309 Conn. 519, 526 (2013) ("[T]here is a clear, well-defined and dominant policy against sexual harassment in this state."). As the district court correctly noted, "[t]he alternative would chill the well-established public policy in favor of 'full and frank communications between attorneys and their clients'" and "would also interfere with the well-recognized public policy against sexual harassment in the workplace." *Egbujo*, 2022 WL 4585688, at *4 (quoting *CFTC v. Weintraub*, 471 U.S. 343, 348 (1986) (additional citations omitted)).

These interests—in investigating allegations of sexual assault or harassment, in protecting an organization from possible misconduct by an employee, and in maintaining a candid attorney-client relationship—align here. The amended complaint concedes that Jackson Lewis's written reports, including the allegedly defamatory statements contained therein, were provided to the Hospital in response to the Hospital's request for an investigative report regarding the alleged sexual assault by Egbujo of another medical resident. *See* App'x at 35 ("The administration of Norwalk Hospital hired [Jackson Lewis] to investigate the accusations and report back to said administration."). Thus, based on the allegations in the amended complaint, any defamatory statements that were transmitted from Jackson Lewis to the Hospital about Egbujo were contained within investigatory reports that Jackson Lewis was retained to provide to its client, which is an "interest to be upheld." *Miles*, 11 Conn. App. at 595. Moreover, any defamatory statements included in the written report shared with Egbujo's attorney likewise served the interest of advising

7

the employee of the results of the internal investigation conducted by Jackson Lewis with respect to the accusations levelled against that employee.[1] In short, in this context, Jackson Lewis has asserted "objective interest[s] sufficiently compelling to warrant protection of an otherwise defamatory communication." *Bleich v. Ortiz*, 196 Conn. 498, 501 (1985). Accordingly, a qualified privilege applies under Connecticut law to communications made for these purposes.

"Because a qualified privilege is available to [Jackson Lewis], the question becomes whether the privilege has been defeated." *Khan*, 347 Conn. at 54–55. Thus, we must turn to the remaining elements of the qualified privilege: whether the scope, occasion, and manner of communication were proper; and whether the defendant acted with malice, an improper motive, or bad faith. *Miles*, 11 Conn. App. at 595; *see also Bleich*, 196 Conn. at 501 ("The privilege is defeated despite assertion of such an interest . . . if the defendant acts with an improper motive or if the scope or manner of publication exceeds what is reasonably necessary to further the interest."); *Gambardella*, 291 Conn. at 633–34 (holding that a qualified privilege can be defeated by malice, which includes "'actual malice,' namely, the publication of a false statement with actual

---

[1] On appeal, Egbujo argues that his allegation that Jackson Lewis transmitted one of the reports to "Plaintiff's attorney" should be interpreted to allege that Jackson Lewis provided the report to Egbujo's *current* attorney, rather than to the attorney who represented him in the Hospital investigation. *See* Appellant's Br. at 15–16 (quoting App'x at 36). That distinction cannot be discerned from the vague allegation in the amended complaint. *See Figlomeni v. C.S.R. Getty, LLC*, No. CV030479244S, 2003 WL 22708694, at *1 (Conn. Super. Ct. Nov. 3, 2003) ("Every favorable inference must be given to the complaint subject to [a motion to strike a claim] but a court cannot create inferences from facts that are not alleged or base inferences on conclusory allegations."). In any event, there is no allegation that the law firm's provision of a copy of its investigative report to one of Egbujo's attorneys was done with any purpose other than to make Egbujo aware of the results of the internal investigation, and thus, that act fell within the scope of the qualified privilege even if the report was sent to his current attorney, rather than the attorney in the underlying Hospital investigation.

knowledge of its falsity or reckless disregard for its truth, or 'malice in fact,' namely, the publication of a false statement with bad faith or improper motive").

In the instant case, the amended complaint contains no plausible allegation that Jackson Lewis furnished copies of the reports to more recipients than were necessary to properly advise its client and Egbujo of the results of the internal investigation. The amended complaint concedes that "[i]t is uncertain whether the second report has been delivered to persons other than Norwalk Hospital, its employees, and [Egbujo's] attorney," but then alleges on "information and belief" that "other persons have seen the second report." App'x at 36. However, Connecticut courts have emphasized, with respect to a defamation claim, that "[a] complaint is insufficient to withstand dismissal for failure to state a cause of action where . . . the complaint set forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made." *Ramirez v. Costco Wholesale Corp.*, No. CV-116020832, 2012 WL 1959059, at *5 (Conn. Super. Ct. May 2, 2012) (internal quotation marks and citation omitted).

Thus, Egbujo's vague and speculative allegation that the second report containing defamatory statements was published to "other persons" beyond the group to whom the qualified privilege attached is insufficient to overcome the privilege. *See, e.g.*, *Avitable v. 1 Burr Rd. Operating Co. II, LLC*, No. FSTCV095012806S, 2010 WL 2926242, at *9–10 (Conn. Super. Ct. June 4, 2010) (striking defamation claim alleging merely that defendant "by and through its employees/agents, made oral and written statements, which were published to third parties" but "fail[ing] to allege the precise identity of the alleged . . . audience, and when these statements were made"); *Crosby v. HSBC N. Am. Holdings, Inc.*, No. CV065000378S, 2007 WL 1599848, at *10 (Conn. Super. Ct. May 16, 2007) (striking defamation claim alleging communication to "one or

9

more employees of the corporate defendants" and stating that placement of statements in personnel file allowed them, and would continue to allow them, "to be seen by third parties," without naming those third parties or indicating "when they had been made aware of the statements"). Egbujo suggests that he will be able to identify those other persons in discovery and that there is "no heightened pleading requirement" under Rule 8 of the Federal Rules of Civil Procedure that would "justify dismissal of a defamation claim for lack of such particularity." Appellant's Br. at 14. However, that argument "misconstrues the pleading requirements" because "a plaintiff must allege facts supporting a plausible claim *before* being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Moreover, the amended complaint is similarly deficient with respect to any allegation of actual malice. To be sure, as the Connecticut Supreme Court has articulated, "if the plaintiff sufficiently alleges with particular facts that the defendant acted with malice when making the statement(s) at issue, at the motion to dismiss stage, the court must take those allegations as true, and, therefore, the [qualified] privilege will be defeated at this stage of the proceedings." *Khan*, 347 Conn. at 55. However, here, the amended complaint does not allege any particular facts to plausibly establish that the qualified privilege was abused as a result of Jackson Lewis's malice, improper motive, or bad faith. *See id.* at 55 n.42 (explaining that "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss"

10

(quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006))). Nor did Egbujo suggest in the district court or on appeal that he had more specific allegations that could be added to an amended pleading with regard to any abuse of the privilege.

In sum, it is clear from the face of the amended complaint that a qualified privilege attaches to the written reports regarding the results of the internal investigation provided by Jackson Lewis to the Hospital and Egbujo's attorney and that Egbujo has failed to allege any facts that would plausibly support overcoming that privilege in this case. Accordingly, dismissal of the defamation claim was warranted.

*　　　　　*　　　　　*

We have considered Egbujo's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court